cc: KJM

ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 05 2017

at __1__ o'clock and __55__ min. __P__ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | MAGISTRATE'S NO. 17-0478 BMK |
| Plaintiff, ) | CASE NO. 2:17mj13-DBP |
| vs. ) | |
| DREW WILSON CRANDALL, ) | |
| Defendant. ) | |

Before the Honorable Kenneth J. Mansfield, U.S. Magistrate Judge, District of Hawaii, Honolulu, Hawaii.

The undersigned deponent being first duly sworn deposes and says:

That deponent is a Special Agent with Homeland Security Investigations; that deponent is informed and believes and, on the basis of such information and belief, alleges that on January 9, 2017, a Complaint was filed in the Central District of Utah, and an arrest warrant issued, charging the above-named defendant, DREW WILSON CRANDALL, with conspiracy to manufacture and distribute Fentanyl, in violation of Title 18, United States Code, Sections 841(a)(1) and 846.

DANIEL E. ASHMENT
Special Agent, Homeland Security
 Investigations

SWORN TO BEFORE ME AND SUBSCRIBED
IN MY PRESENCE THIS 5th DAY OF
MAY, 2017.

KENNETH J. MANSFIELD
UNITED STATES MAGISTRATE JUDGE

**SEALED**

FILED IN UNITED STATES DISTRICT COURT, DISTRICT OF UTAH
JAN 09 2017
D. MARK JONES, CLERK
_____
DEPUTY CLERK

JOHN W. HUBER, United States Attorney (#7226)
MICHAEL GADD, Special Assistant United States Attorney (#13704)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682
Email: michael.gadd@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. DREW WILSON CRANDALL, Defendant. | Case No. 2:17mj13-DBP  COMPLAINT  Judge Dustin B. Pead |

Before the Honorable Dustin B. Pead, United States Magistrate Court Judge for the District of Utah, appeared the undersigned, who on oath deposes and says:

### COUNT I
21 U.S.C. § 841(a)(1) & 846
(Conspiracy to Manufacture and Distribute Fentanyl)

Beginning at a date unknown, but not later than July 15, 2015, and continuing through at least November 22, 2016, within the Central Division of the District of Utah and elsewhere,

DREW WILSON CRANDALL,

1

the defendant herein, did knowingly and intentionally combine, conspire, confederate, and agree with others known and unknown to manufacture and distribute four hundred grams or more of a mixture or substance containing a detectable amount of Fentanyl (1-(2-phenethyl)-4-(N-propionylanilino) piperidine), a Schedule II controlled substance within the meaning of 21 U.S.C. § 812; all in violation of 21 U.S.C. § 841(a)(1) and 846 and punishable pursuant to 21 U.S.C. § 841(b)(1)(A).

This complaint is made on the basis of investigation consisting of the following:

### Introduction and Agent Background

1. I am a Special Agent (SA) with Homeland Security Investigations (HSI) and have been so employed since 2009. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7) and I am authorized by law to conduct investigations and to make arrests for felony offenses. I am currently assigned to the Assistant Special Agent in Charge, Salt Lake City, Utah. I am authorized and assigned to investigate violations of federal laws, including 21 U.S.C. §§ 841(a)(1), 846, 848, and 843(b) of the Drug Abuse Prevention and Control Act of 1970; that is, possession with intent to distribute and the distribution of controlled substances, conspiracy to commit such offenses, the operation of a continuing criminal enterprise, and the use of a communication facility to facilitate a felony violation of the Drug Abuse Prevention and Control Act of 1970. During my tenure as a federal law enforcement officer, I have investigated and/or participated in investigations of conspiracy, money

laundering, narcotics trafficking, fraud, smuggling and theft.  I have also acquired knowledge and information about the illegal drug trade and the various means and methods by which it is furthered including through the use of computers, smart phones, digital media and the Internet from formal and informal training, other law enforcement officers and investigators, informants, individuals I have arrested and/or interviewed, and from my participation in other investigations.  I am currently detailed to the HSI Salt Lake City's Interdiction Task Force.

### Statement of Probable Cause

2.  This investigation involves an international drug trafficking organization, run by Aaron SHAMO and Drew Wilson CRANDALL, which has manufactured controlled substances, namely fake prescription pills made from Fentanyl and in turn distributed these controlled substances to other individuals for purposes of further distribution throughout the United States and elsewhere to include people here within the District of Utah.

3.  On November 22, 2016, Aaron SHAMO was arrested in the District of Utah for the felony crime of Conspiracy to Distribute a Controlled Substance (Fentanyl). The investigation initially revealed that SHAMO and CRANDALL had imported fentanyl, manufactured fake pharmaceutical pills with the Fentanyl, and distributed the Fentanyl pills throughout the United States using the US postal system.

4.  On November 22, 2016, a search warrant was done on SHAMO's residence and investigators located and seized additional evidence indicative of narcotics

trafficking to include suspected precursor chemicals, approximately 70,000 pills that had the appearance of oxycodone, pill press machines, and approximately $1,227,773 in US currency, which is believed to be proceeds from narcotics trafficking.

5. The investigation also revealed that SHAMO and CRANDALL used A.T. and K.B. to deceptively package and ship the Fentanyl pills to customers who ordered them from SHAMO and CRANDALL via their Dark Net[1] store.

6. On November 22, 2016, investigators executed a search warrant at the residence of A.T. and K.B. which resulted in the discovery and seizure of Fentanyl, shipping labels, packaging and other evidence indicative of narcotics trafficking.

7. A.T., after waiving her Miranda warnings, provided me a statement. A.T. told me that she and K.B. met SHAMO and CRANDALL while working at eBay. A.T. stated that SHAMO and CRANDALL quit their jobs at eBay. A.T. was initially told by SHAMO and CRANDALL that they left eBay because they were trading bitcoin and were making a lot of money. A.T. told me that she was unsure what trading bitcoin entailed, but realized the two (SHAMO and CRANDALL) continued to make a lot of money after they quit their jobs at eBay.

---

1 Dark Net sites operate on the Dark Web, which cannot be accessed without special software, and is a smaller part of the Deep Web. The Deep Web is an area of the internet not accessible using typical search engines like Google; the Deep Web accounts for approximately 96% of the internet. The Surface Web or Normal Web, on the other hand, accounts for just 4% of the internet. The vast majority of internet users are only familiar with the existence of the Surface Web.

8. A.T. told me that she maintained a friendship with SHAMO on Facebook, and asked SHAMO how they made so much money and how she could get involved. Approximately two years ago, SHAMO and CRANDALL hired A.T., and her roommate, K.B., to work as a "drop"—a role in which they would receive packages sent via commercial courier to their residence, located at 11469 Open View Lane, in South Jordan, Utah, and then turn the packages over to SHAMO and CRANDALL. A.T. explained that SHAMO and CRANDALL would pay them approximately $200 to $300 per package.

9. A.T. also told me that she knew the packages contained something illegal, but did not know what the contents were at that time. She remembered that a few of the packages came from Florida, and some came from other countries. She thought that some of the packages had Chinese writing on them. She estimated they had received approximately four packages at their residence before June, 2015.

10. In June of 2015, A.T. said she asked SHAMO and CRANDALL if they could play a different role in the organization to make more money. A.T. told me that SHAMO and CRANDALL allowed A.T. and K.B. to become more involved in their drug trafficking organization by "packaging" narcotics for SHAMO and CRANDALL.

11. A.T. explained that CRANDALL came over nightly to A.T. and K.B.'s residence and instructed them on how to package narcotics in order to ship them out to customers from whom he had received orders on the Dark Net.

12. A.T. stated that CRANDALL showed A.T. and K.B. how to wrap the packages, specifically using a vacuum sealer and Mylar bags, which he told them would make the narcotics undetectable.

13. A.T. explained to me that A.T. and K.B. used padded envelopes or priority mail envelopes and regular stamps to ship the narcotics. She told me that CRANDALL brought them envelopes and stamps. If they purchased shipping supplies on their own, she informed me that they were reimbursed by either SHAMO or CRANDALL. A.T. also told me that they were instructed by CRANDALL to use fictitious company names as the shippers on the package labels.

14. A.T. also informed me that she and K.B. would receive "drops" of narcotics from both SHAMO and CRANDALL—meaning that SHAMO and CRANDALL would provide the fake pills that A.T. and K.B. would package and ship to customers.

15. A.T. told me that CRANDALL left the country approximately a year ago and moved to New Zealand with his girlfriend. A.T. also told me that SHAMO had previously told her and K.B. that he had "bought Drew out." From that point forward SHAMO exclusively made all the narcotics deliveries to their residence.

16. A.T. informed me that at the time of our interview, November 22, 2016, CRANDALL was in Laos with his girlfriend but was once again involved in the organization—CRANDALL was sending messages and providing customer service on the Dark Net related to narcotics orders from SHAMO's customers.

17. On November 22, 2016, Inspectors Henderson and Wissler from the United States Postal Inspection Service (USPIS) interviewed K.B.

18. K.B., after waiving her Miranda warnings, told the inspectors that both SHAMO and CRANDALL would pay K.B. and A.T. to receive parcels.

19. K.B. stated that CRANDALL showed her and A.T. how to package the pills properly so product was not damaged during shipment. K.B. also informed the Inspectors that CRANDALL directed her and A.T. to put the pills in mylar bags because they could not be X-rayed, and to include an invoice inside each package.

20. K.B. told the Inspectors that in the beginning CRANDALL would bring narcotics in "Ziploc baggies or gallon baggies" to their residence for repackaging and shipment.

21. K.B. explained to the Inspectors that A.T. would download encrypted "order fulfillment" information from an email sent by SHAMO. K.B. explained to the Inspectors that she believed the email account over which A.T. and SHAMO communicated was accessed using TOR.[2] K.B. stated that Crandall showed A.T. how to access that email account, decrypt the order fulfillment list, and then print the information—which included the quantity and shipping address for each customer.

---

2 TOR stands for "The Onion Router," which is a browser that is used to access the Dark Web. It is designed to prevent anyone from identifying the true IP address of anyone who accesses sites with the browser. The TOR browser allows a user to access deep web addresses ending in the ".onion" suffix. Likewise, Dark Net site addresses ending in " .onion" are accessed using TOR.

Emails from that encrypted account were periodically deleted, but agents found an email with instructions (written by Crandall) that was dated July 15, 2015.

22. On December 7, 2016, HSI Special Agents Guy Gino and Adam Koeneman interviewed M.N., who informed the agents that he worked for SHAMO responding to messages and providing customer service for SHAMO's Dark Net "store."

23. M.N. explained that SHAMO provided him with access to the Dark Net account that was selling fake oxycodone-type pills made with Fentanyl. M.N. further explained that he would process the orders, answer messages and provide customer service responses to customers. M.N. said also explained that he would generate the daily order fulfillment list, encrypt it, and send it to the packagers/shippers.

24. M.N. informed the agents that sometime in September 2016, he was told by SHAMO that there was another individual who was providing the same services as M.N. Further, M.N. told the agents that SHAMO referred to the other individual as "Drew," and that Drew was providing those services while travelling to India and Cambodia.

25. M.N. stated that he believed this person to be Drew CRANDALL because he was friends with CRANDALL's girlfriend and observed that she was travelling to those places with CRANDALL via social media posts during that time period.

Based on the foregoing, I have probable cause to believe, and I do believe, that Drew CRANDALL knowingly and intentionally conspired to manufacture and distribute a substance containing a detectable amount of FENTANYL in violation of 21 U.S.C. §§ 846 and 841(a)(1).

Based on the foregoing information, your affiant respectfully requests that a warrant of arrest be issued for DREW CRANDALL for a violation of 21 U.S.C. §§ 846 and 841(a)(1).

_____
Affiant, Daniel E. Ashment
Special Agent, Homeland Security Investigations

SUBSCRIBED AND SWORN to before me this ___9th___ day of January, 2017.

_____
Dustin B. Pead
United States Magistrate Court Judge

APPROVED:

JOHN W. HUBER
United States Attorney

_____
Michael Gadd
Special Assistant United States Attorney