## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **DETENTION ORDER** |
| vs. | Case No. 2:16CR631DAK |
| DREW WILSON CRANDALL, | Judge Dale A. Kimball |
| Defendant. | |

This matter is before the court on Defendant Drew Wilson Crandall's appeal of Magistrate Judge Barry M. Kurren's May 9, 2017, order to detain Defendant pending trial pursuant to 18 U.S.C. § 3142. On November 20, 2017, this court held an evidentiary hearing on Defendant's motion for review of detention. At the hearing, Defendant was present and represented by James C. Bradshaw and Mark R. Moffat, and the United States was represented by S. Michael Gadd and Vernon G. Stejskal. The court took the appeal under advisement. This court has reviewed Defendant's motion and the law and facts relevant to the determination of Defendant's pretrial detention. Being fully advised, the court issues the following Order.

Under DUCrimR 57-16(a)(1), a party is entitled to appeal a magistrate judge's detention order under 18 U.S.C. § 3145(b), which allows review of a detention order to the assigned district judge. Under 18 U.S.C. §3142(f), in determining detention, the court considers "whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community." Subsection (g) then outlines

several types of relevant information to consider, such as the nature and circumstances of the charged offense, the weight of the evidence against the person, the history and characteristics of the person, family ties, employment, length of residence in the community, drug abuse, criminal history, and the nature and seriousness of the danger to any person or the community posed by the person's release. *See id.* § 3142(g).

Because of the controlled substance offenses charged in this case, a rebuttable presumption exists that "no condition or combination of conditions will reasonably assure the safety of any other person and the community" if the court finds "probable cause to believe that the defendant committed" the charged offense. *Id.* § 3142(e)(3).

After reviewing the evidence in this case, the court finds that Defendant has not rebutted the presumption that he remain detained pending trial. The nature of the charged offenses are serious, the weight of the evidence against Defendant is strong, and Defendant is facing a substantial prison sentence. All of these factors weigh heavily in favor of detention. Defendant points to his lack of criminal history in support of his pretrial release, but the court finds his criminal history less relevant than the allegations that he was participating in a large-scale criminal enterprise for over a year, continued to engage in the enterprise while he was traveling abroad, and took steps to obstruct the investigation into the operation when Shamo was arrested.

In favor of his release, Defendant also points to a strong family support network. Defendants parents are willing to let him live in their home, employ him in the family business, and post their home as security for his compliance. Defendant's parents testified on his behalf and numerous family members attended the hearing to support Defendant. It is undoubtedly a strong family network. And, it was obvious to the court that Defendant's parents are good and honorable

people who have repeatedly helped their son through challenges. The court also does not doubt that Defendant's parents would be honest and forthcoming with any difficulties that may arise during a pretrial release. But Defendant's parents' law-abiding conduct is not transferrable to Defendant. The scope and reach of Defendant's ability to engage in operations or communications on the internet and dark web would be difficult for his parents to monitor. In addition, the testimony showed that Defendant has a history of keeping information from his parents. Defendant's mother testified that the day after Shamo was arrested, Defendant indicated to her that he would cooperate with law enforcement. Whereas, the government presented evidence demonstrating that Defendant shut down accounts and obstructed the government's investigation into the operation that same day. The testimony demonstrated that Defendant's parents had no idea of Defendant's potential level of involvement. His statements to his mother made it sound like he was a potential witness against Shamo, not a co-indicted defendant. Given his actions in shutting down the operation's accounts, Defendant appears to portray himself in the best possible light to his parents while acting in his own self interest. In addition, given that Defendant had the access and authority with respect to the operation's accounts that allowed him to take down the accounts upon Shamo's arrest, it stands to reason that he has the knowledge and ability to re-activate or re-engage in similar accounts and operations if he chose to do so.

The court also agrees with the government that Defendant's potential employment with his mother's catering business is not the type of long-term tie to the community that would ensure Defendant's appearance. Other than the enterprise for which he has been charged, Defendant has only had short-term employment. Defendant appears willing to engage in menial labor and live relatively frugally throughout the world. He also has the ability to engage in business on the dark

web from anywhere in the world.  The evidence regarding the sporadic nature of his employment history actually favors detention.  Therefore, the court does not find that his mother's offer of employment is a factor that would ensure his appearance or keep him from engaging in illegal conduct on release.

In addition, Defendant is not offering any surety of his own to ensure his pretrial appearance.  The court does not share his parents' trust that he would honor the surety of their home.  Based on the evidence before the court, the court agrees with the government that Defendant appears to be largely motivated by greed and his own self interest.  When he was arrested, Defendant lied to investigators by claiming he knew little about bitcoin and stated he had bought one bitcoin, once.  Records show that Crandall had extensive knowledge and exposure to bitcoin.  Therefore, the court finds that the surety offered by Defendant's parents, rather than some surety of Defendant's own, is not adequate to ensure Defendant's appearance.

Defendant further argues that the court cannot consider him a flight risk merely because he has traveled extensively.  The court agrees that traveling widely is no indication that a defendant would flee.  The traveling Defendant engaged in with his parents was humanitarian in nature and commendable service.  However, the evidence of Defendant's recent travels are not of the same nature.  Prior to leaving the country in November 2015 with his girlfriend, Defendant had a roommate interviewed by homeland security and had caused his girlfriend to lose her job because of conduct linked to the drug operation.  This evidence contradicts Defendant's claim that he and his girlfriend were traveling only for an interest in seeing the world.  The court agrees with the government that this evidence could show that Defendant left the country because he feared being caught.  Defendant's claim that he left to break away from Shamo also finds little support in the

4

evidence. Defendant may have had a short break from Shamo's operations, but it is clear that he was involved from June through November 2016 even though he was living and traveling outside of the United States.

In addition, Defendant and his girlfriend admit to having contacts in the countries where they traveled. While those contacts might not be tied to the criminal enterprise, they demonstrate that Defendant and his girlfriend were not merely vacationing. They were gaining employment and establishing roots in those places. This cuts against Defendant's argument that he has strong ties to Utah and the community. The only evidence of strong ties to the community is his parents' ties to the community, not Defendant's. Defendant and his girlfriend had been living abroad for well over a year and she stated to agents that she saw no future for them in the United States. Although Defendant and his girlfriend planned to meet family in Hawaii for their wedding, there is no evidence that Defendant had any intention of or interest in returning to Utah.

Defendant also claims that he will forfeit his passport. However, Defendant's knowledge and experience on the dark web would allow him to quickly and easily obtain a fake passport. In addition, given the use of bitcoin in the alleged operations, the court is uncertain as to assets Defendant may have available to him. Similarly, the court does not believe that a GPS monitor would be effective in ensuring Defendant's appearance. A defendant with the ability or desire to leave can, unfortunately, cut or slip them off at a time that makes it difficult for authorities to pursue them.

Defendant contends that the government's treatment of him is unfair because several low-level delivery and packaging defendants are on pretrial release even if they have been charged on more counts. However, the court must determine pre-trial release on a person-by-person basis and

apply the statutory considerations to each individual.  None of the other Defendants have appeared before the court and obviously their situations are all different.  The court does not believe that the difference in treatment relates to the fact that Defendant was out of the country.  Defendant's claim that he knew little about bitcoin certainly did not help him.  And, while the other Defendants may be named in more counts, the other defendants appear to have taken direction from Crandall and do not appear to have had the kind of access to parts of the operation to shut down accounts upon Shamo's arrest.  In any event, the court must apply the factors to the individual before it.

After considering the relevant factors, the court concludes that none of Defendant's proffered evidence demonstrates that any type of pretrial supervised release could prevent him from re-engaging in his alleged prior operations at least to some extent or from fleeing the country if he so desired.  The parties appear to have presented two different people to the court.  While Defendant makes many self-serving assertions, few of them are supported by any evidence.  Whereas the government's arguments are supported by the exhibits submitted to the court.  Defendant has not rebutted the presumption based on the state of the evidence.  Moreover, based on the current state of the evidence, the court is concerned that if Defendant does re-engage in his prior conduct, he would pose a serious, life-threatening danger to the community.

The court concludes that Defendant should remain detained pending trial.  Therefore, the court AFFIRMS Magistrate Judge Kurren's May 9, 2017 Order that Defendant shall remain detained pending trial.

DATED this 21st day of November, 2017.

BY THE COURT

DALE A. KIMBALL
United States District Judge