IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>vs.<br><br>DREW WILSON CRANDALL,<br><br>                    Defendant. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No.  2:16CR631DAK<br><br>Judge Dale A. Kimball |

      This matter is before the court on Defendant Drew Wilson Crandall's appeal of Magistrate Judge Dustin Pead's April 7, 2020 Order Denying Defendant's Renewed Motion for Detention Review.  On April 30, 2020, this court telephonically held oral argument on Defendant's appeal. Defendant was on the telephone conference and represented by James C. Bradshaw.  The United States was represented on the telephone conference by S. Michael Gadd, Vernon G. Stejskal, and Kent Burgggraaf.  The court took the appeal under advisement.  This court has reviewed Defendant's motion and the law and facts relevant to the determination of Defendant's detention pending sentence.  Being fully advised, the court issues the following Order.

      Under 18 U.S.C. § 3145(c), a party is entitled to appeal a magistrate judge's detention order to the assigned district judge.  Section 3145(c) provides that "[a] person who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."  Under 18 U.S.C. § 3143(a)(1),

"the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under Section 3142(b) or (c)."  If the court makes such findings, the court shall order the release on personal recognizance or set specific conditions for release.

Prior to trail, this court ordered Crandall's detention based on his recent residence in another country, which impacted his likelihood of fleeing this jurisdiction prior to trial, and the unknown extent of his involvement in the criminal enterprise, which impacted his likelihood of continuing or restarting a criminal enterprise while released.  The Magistrate Judge necessarily had to rely on the court's prior findings in making his recent determination.  The court, however, has a different understanding of Crandall based on all the evidence that was presented at trial.  Crandall testified truthfully about his involvement in the criminal enterprise.  His testimony was corroborated by the evidence and other witnesses.  Crandall was instrumental in the beginning of the illegal drug operation with Shamo.  However, at that time, they sold counterfeit Xanax and club drugs, they did not sell fentanyl.  Crandall was not involved in Shamo's decision to begin selling fentanyl because, by that time, Crandall had left the country to make a break with Shamo's operations.  Although Defendant reconnected with Shamo after Shamo began selling fentanyl, he came back with a limited role doing customer service online.  When the court made its pretrial detention ruling, the court was unsure whether Shamo or Crandall controlled the operations.  After trial, however, Crandall's role is much clearer.

Although Crandall lived abroad prior to being arrested, the court has no concerns that he

will flee the country at this stage of the proceedings. Crandall's parents are willing to let him live at their home during his release. They are also willing to use their home as a bond to ensure his reappearance at sentencing. While the court previously questioned whether his parents knew their son well enough to make such a sacrifice, the court knows now that his parents are fully aware of his past conduct and are willing to accept responsibility with Crandall to ensure his appearance. This family support is critical in the calculus of whether he is likely to flee. The government argues that Crandall has an incentive to flee because he is looking at a potentially lengthy sentence, but the court agrees with defense counsel that Crandall will not throw away the three years he already has as credit toward his ultimate sentence. When Crandall left the country last time, he had a payout from Shamo, he had been saving to do so, and he left with his girlfriend in order to make a split from Shamo. While he may have learned to live abroad frugally, he has significantly fewer resources at his disposal this time around and would have no support from others. It is thus highly unlikely that he would make a split from his family and fiancée to flee. Crandall has turned over his passport and the court believes that he would be unlikely to obtain a fake one in order to flee. Given the present global pandemic, many countries are prohibiting the entrance of United States' citizens and his travel would be subject to increased scrutiny. Moreover, Crandall's assistance to the government and his testimony at trial demonstrate that he is attempting to accept responsibility for his past actions. All of these factors weigh against a likelihood of fleeing. The court finds, based on clear and convincing evidence, that Crandall is not likely to flee.

     In addition, Crandall is not likely to re-engage in criminal behavior or be a danger to the community. Crandall has no criminal history apart from the present offense. Crandall may have begun a criminal enterprise with Shamo, but he is the only defendant in this case who tried to

make a break from it while it was operating.  Every other defendant got more and more involved in the criminal enterprise as the profits increased.  Crandall broke from it all and came back in a limited fashion for limited income.  Crandall's involvement appears to have been based on financial pressures.  He started the enterprise with Shamo to get out of his student loan debt and he reconnected with Shamo when he had financial pressures living abroad.  However, pending sentencing, Crandall's parents have agreed to let him live at their home. help him with his student loan debt, and give him a job in their family business.  Without financial pressures, there is no reason to believe that Crandall would re-engage in criminal conduct in the limited time between his release and sentencing.  Therefore, the court finds that he does not pose a danger to the community.

To release Crandall pending sentencing, the court must also find exceptional circumstances.  Crandall argues that the Covid-19 pandemic presents exceptional circumstances.  However, the government points out that there are no cases of Covid-19 at the Tooele County Jail where Crandall is detained.  In addition, the Tooele County Jail is taking precautions to ensure that new detainees are quarantined from other inmates.  Moreover, as a young, healthy individual, it is unlikely that Crandall would suffer significant complications from the virus.  The court agrees that these factors weigh against a finding of exceptional circumstances.

The court, however, has significant problems with detaining an individual pending sentencing who can so easily be managed on release and whose sentencing date is indefinite, while our jails are in need of housing only those who actually need to be detained.  The government agreed to sentence Crandall after Shamo's sentencing, and Shamo's sentencing has been delayed due to questions regarding his competency.  The court is uncertain as to when Shamo's

competency issue will be resolved.  Therefore, Crandall has no sentencing date.  The court finds that this indefinite delay unduly taxes the county jail, which contracted to house federal pre-trial detainees not indefinite pre-sentencing detainees.  Given that Crandall could so easily be managed on a conditional release pending his sentencing, the court finds that these unusual circumstances meet the exceptional circumstances standard.

Accordingly, the court orders that Crandall be released pending his sentencing pursuant to the following conditions: (1)  he live at his parents home, (2) he abides by all standard conditions of release, (3) he refrains from the use of alcohol or any illegal substances, (4) he refrains from any activity on the Dark Web, (5) his parents agree to assume supervision and report any violation of his release conditions, and (6) his parents post a bond for $300,000.  The court will enter a separate order setting Defendant's conditions of release.  Accordingly, the Magistrate Judge' Detention Order is reversed.

DATED this 5th day of May, 2020.

BY THE COURT

DALE A. KIMBALL
United States District Judge