ANDREA T. MARTINEZ, Acting United States Attorney (#9313)
MICHAEL GADD, Special Assistant United States Attorney (#13704)
KENT A. BURGGRAAF, Special Assistant United States Attorney (#13044)
VERNON G. STEJSKAL, Assistant United States Attorney (#8434)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Email: michael.gadd@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. DREW WILSON CRANDALL, ALEXANDRYA MARIE TONGE, KATHERINE LAUREN ANNE BUSTIN, MARIO ANTHONY NOBLE, and SEAN MICHAEL GYGI, Defendants. | Case No. 2:16-cr-00631-DAK STATUS UPDATE REGARDING RESTITUTION AND THE UNITED STATES' MOTION FOR RESTITUTION Judge Dale A. Kimball |

The United States submits the following status report and motion regarding restitution. The Court ordered Aaron Shamo—a co-conspirator with these defendants—to pay the restitution amounts below as part of its Judgment:

| Amount | Victim/Representative/Insurer | Purpose |
|---|---|---|
| $24,625.00 | T. K. | Funeral and related expenses for G.K.; lost income |
| $29,698.57 | L.V. | Lost income |
| $12,724.32 | J. L. | Damages at Titian Way house not covered by insurance |
| $47,226.08 | United Insurance Group | Insured damages at Titian Way house |
| $18,193.00 | R. R. | Damage to personal property at Titian Way house |

1

On June 8, 2021, restitution totaling $85,240.89 was paid to the clerk of the Court to be applied to the following victims and victims' representatives, in the following amounts:

| Amount | Victim/Representative |
|---|---|
| $24,625.00 | T. K. |
| $29,698.57 | L.V. |
| $12,724.32 | J. L. |
| $18,193.00 | R. R. |

Most of Mr. Shamo's restitution obligations have been paid; the only remaining restitution amount due is $47,226.08, payable to United Insurance Group for losses incurred by J.L., Mr. Shamo's landlord. The United States moves the Court to order the defendants to pay joint and several restitution to United Insurance Group in the amount of $47,226.08.[1]

The United States' restitution request is lawful and appropriate in this case for the following reasons: (1) the offenses of conviction, including Conspiracy to Distribute Fentanyl, are the type for which the Court is authorized by law to order restitution; (2) the Court should find by a preponderance of the evidence that the defendants and/or their co-conspirators caused the reasonably foreseeable harm for which restitution is ordered; (3) the victim is identifiable and falls under the statutory definition of "victim"; and (4) the restitution sought by the United States corresponds with losses which are recoverable by law.

---

[1] A nearly identical copy of this Status Update Regarding Restitution was filed in Mr. Paz and Ms. Noriega's cases.

**1. Proffered Evidence[2]**

1. Mr. Shamo and Mr. Paz, co-conspirators of these defendants, manufactured Fentanyl-laced fake oxycodone pills in a room in the basement of Mr. Shamo's residence on Titian Way. The defendants and their co-conspirators sold the majority of those pills on the darknet under the vendor name Pharma-Master.

2. Mr. Shamo was leasing the residence on Titian Way from J.L., his landlord.

3. On information and belief, J.L. obtained insurance on the residence on Titian Way through United Insurance Group.

4. When agents executed a search warrant at Mr. Shamo's residence on Titian Way on November 22, 2016, the warrant was executed by agents in Hazmat protective gear including self-contained breathing apparatuses. After the warrant was completed, the county health department condemned the residence because of the toxic nature of Fentanyl.

5. On information and belief, much of the non-evidentiary personal property inside of the residence on Titian Way was disposed of by abatement contractors. J.L. and his insurance company spent thousands of dollars to restore the property to a point where the health department would remove its order.

6. J.L. submitted a restitution request and supporting documents. That request and the supporting documents were previously filed under seal because they contain personal identifying information.[3]

7. J.L. (who received assistance from United Insurance Group) submitted a spreadsheet showing losses incurred as a result of the lost rent and restoration costs.

---

[2] The rules of evidence do not appear to apply; the United States requests to proceed by proffer. Fed. R. Evid. 1101(d)(3).
[3] Dkt. 371, Exhibit A. Service of the sealed filing was sent by email to defense counsel for Mr. Shamo and his co-conspirators.

8. Luke Paz has agreed in his Statement in Advance of Plea to pay $46,941.07 in restitution to J.L.[4] Because J.L.'s insurance company paid on his claim for the damages associated with Fentanyl contamination, the United States will seek to have Mr. Paz pay $46,941.07 in restitution to United Insurance Group, who stands in the place of J.L.

9. There is no other agreement between the United States and any co-conspirator regarding restitution.

10. The co-conspirators held the following roles and responsibilities:



11. Mr. Noble, Mr. Crandall, Mr. Paz, Ms. Tonge, and Ms. Bustin knew that their organization was distributing pills that contained Fentanyl. Mr. Gygi understood the packages that he

---

[4] That was the loss amount known to the United States at the time Mr. Paz pleaded guilty.

4

shipped for the organization contained drugs but did not know they contained Fentanyl until he met with investigators. Ms. Noriega knew that the organization was manufacturing and distributing drugs, although she thought it was Cocaine, not Fentanyl.

12. All of the defendants knew Mr. Shamo was conducting his drug enterprise from his residence on Titian Way in Cottonwood Heights.

## 2. Offenses

These defendants' offenses of conviction, specifically, Conspiracy to Distribute Fentanyl, are offenses for which the Court may order restitution under Title 18, United States Code, Section 3663.[5] Section 3663 is sometimes referred to as the discretionary restitution statute, drawing a distinction from Section 3663A, which governs cases where restitution is mandatory.

For offenses that involve, as an element of the offense, a scheme, conspiracy, or pattern of criminal activity, such as Conspiracy to Distribute Fentanyl, the Court can order restitution for "any person directly harmed."[6]

## 3. Direct and proximate causation

The Court should find by a preponderance of the evidence that these defendants and/or their co-conspirators caused the harm that underlies the restitution requests. The United States has the burden to prove losses sustained by victims by a preponderance of the evidence.[7] Victims are those who have been directly and proximately harmed.[8]

The Supreme Court, in *Hughey v. United States*, once held that restitution was limited to

---

[5] 18 U.S.C. §3663(a).
[6] 18 U.S.C. §3663(a)(2).
[7] 18 U.S.C. §3664(e); *see also United States v. Richard*, 738 F.2d 1120, 1122 (10th Cir 1984) (citing 18 U.S.C. §3580, which was recodified as 18 U.S.C. §3664).
[8] 18 U.S.C. §3663(a)(2).

losses caused by the underlying offense of conviction.[9] The first half of the holding, that some causation was required, was unremarkable. However, the second half of the holding, that restitution could only be ordered for losses caused by the offense of conviction, caused a major stir. That same year, 1990, Congress amended Section 3663 and expanded the definition of a victim to include all harmed in the course of a scheme, conspiracy, or pattern of criminal activity for any offense that has as an element either a scheme, conspiracy, or pattern of criminal activity.[10]

In interpreting a companion restitution statute that likewise requires direct and proximate cause, the Supreme Court explained the "proximate causation" requirement has two components: a factual, causal connection between the offense and the injury (cause-in-fact), and a limitation on recovery for remote damages (proximate cause).[11] The Supreme Court explained that restitution did not require "strict but-for causation," which would effectively undermine Congressional intent to compensate crime victims and punish criminals.[12]

In cases like this one, in which the defendants act in concert with co-conspirators, the actions of co-conspirators do not absolve a defendant from responsibility to pay restitution, so long as the conduct was within the offense of conviction. Instead, acts committed by co-conspirators often cause harms for which restitution should be ordered. For example, in *United States v. Teehee*, the defendant was convicted of trafficking in 39 unauthorized long-distance Sprint cards that the defendant sold to 8 or 10 other individuals, resulting in a loss to Sprint of

---

[9] *Hughey v. U.S.*, 495 U.S. 411, 419 (1990).
[10] *See* Pub. L. No. 101-647, 104 Stat. 4789, 4863, Section 2509 (Nov. 29, 1990), codified at 18 U.S.C. §3663(a)(2), which was passed in response to *Hughey v. U.S.*, 495 U.S. 411 (1990).
[11] *Paroline v. United States,* 134 S. Ct. 1710, 1719 (2014).
[12] *Id*. at 1727.

over $600,000.[13] The defendant claimed that some of the losses were the result of "the independent actions of other persons who had acquired US Sprint access codes from other sources,"[14] but the Tenth Circuit held that the defendant's "criminal activity was not confined to his own phone use; through his sales activity, appellant caused significant downstream activity."[15] Courts are willing to award restitution to victims who were indirectly injured by a defendant's conduct, particularly in cases where a scheme or pattern of criminal activity was involved.[16]

Courts have taken an expansive view towards inclusion of harms for restitution purposes. For example, in *United States v. Richard*, Richard was ordered to make restitution to a bank the amount taken in a bank robbery and not recovered, even though the defendant argued that the unrecovered funds may have been stolen by another, who used the robbery as a cover.[17] The Tenth Circuit held that the United States need not prove that the defendant was directly responsible for the loss; it was enough that the defendant "created the circumstances under which that could occur."[18]

With respect to the damage to physical property suffered by J.L., the damage was direct and proximate. Mixing Fentanyl powder inside the home was a recipe for disaster. Mr. Shamo and Mr. Paz understood the risk; they wore personal protective equipment when mixing Fentanyl powder with other ingredients.

---

[13] *United States v. Teehee*, 893 F.2d 271, 274 (10th Cir. 1990).
[14] *Id.* (quoting from the defendant's brief).
[15] *Id.* at 275.
[16] *See, e.g., United States v. Sapp*, 53 F.3d 1100 (10th Cir. 1995) (defendant's failure to tell the first bank the amount of credit (fraudulently) obtained from the second bank caused a loss to the first bank, which would not have discounted debt if it knew the amount of credit available from the second bank).
[17] *United States v. Richard*, 738 F.2d 1120, 1123 (10th Cir 1984).
[18] *Id.*

The manufacture of controlled substances for later distribution in the house on Titian Way was the direct cause of J.L.'s losses. The defendants and their co-conspirators caused the losses—at a minimum they created the circumstances under which the losses could occur like in *Richard*. Like in *Teehee*, those losses were foreseeable for each of the defendants and not too remote to prevent recovery.

Finally, exposing J.L.'s residence on Titian to Fentanyl was a reasonably foreseeable harm; each of the defendants knew Mr. Shamo was running his enterprise from the residence on Titian Way. Each of the defendants knew that drugs were being manufactured or distributed. Most of the defendants knew, specifically, that the pills contained Fentanyl.

**4. Identifiable Victim**

The victim, J.L., qualifies as a type of victim for whom the Court may order restitution. "[T]he term "victim' means a person . . . harmed as a result of the commission of an offense for which restitution may be ordered including . . . any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern."[19]

The Court can order restitution to those who compensated a victim, such as insurers, but direct victims have to be paid in full first.[20] J.L. is properly identified as a victim. United Insurance Group is a third-party compensator entitled to restitution under Section 3664(j)(1).

**5. Recoverable Losses**

The restitution sought by the United States is for losses recoverable by statute. Section 3663 allows the Court to award restitution for losses for damage to property, among other

---

[19] 18 U.S.C. §3663(a)(2).
[20] 18 U.S.C. §3664A(j)(1).

categories.[21]

An exact calculation of actual loss is not required.[22] Calculating restitution can be an inexact science; Courts should seek to reach an "expeditious, reasonable determination by resolving uncertainties with a view toward achieving fairness to the victim."[23]

J.L.'s losses (most of which were compensated by United Insurance Group) are losses for damage to property. The damage included having the home on Titian Way condemned by the Health Department for a period of time during which abatement and restoration efforts were undertaken. J.L. and United Insurance Group should be compensated for all the losses J.L. claimed.

Respectfully submitted this 11th day of June, 2021.

                        ANDREA T. MARTINEZ
                        Acting United States Attorney

                        /s/ *Michael Gadd*
                        MICHAEL GADD
                        Special Assistant United States Attorney

---

[21] 18 U.S.C. §3663(b)(3).
[22] *United States v. Davis*, 60 F.3d 1479, 1485 (10th Cir. 1995); *see* U.S.S.G. §5E1.1.
[23] *Davis*, 60 F.3d at 1485 (*citing United States v. Brewer*, 983 F.2d 181, 185 (10th Cir. 1993) and U.S.S.G. §5E1.1, comment (1995)). The language in U.S.S.G. §5E1.1 currently explains that the Court can forgo ordering restitution when "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." That is not the case here.